# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM L. JACKSON, | ) |
| | ) |
|          **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-09-290-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|          **Defendant.** | ) |

## OPINION AND ORDER

The claimant William Lee Jackson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 11, 1961, and was forty-six years old at the time of the administrative hearing. He earned his GED while serving in the United States Army (Tr. 271-72) and has worked as a janitor, a gas station attendant, and a jailer (Tr. 68-70). The claimant alleges that he has been unable to work since December 13, 2006 because of anxiety, depression, hepatitis B & C, cirrhosis, chronic obstructive pulmonary disease (COPD), carpal tunnel, hypertension, and high cholesterol (Tr. 252).

## Procedural History

The claimant applied on December 20, 2006 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Kim D. Parrish held an administrative hearing and determined the claimant was not disabled in a written opinion dated August 4, 2008. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the physical ability to perform the full range of light work as defined in

20 C.F.R. §§ 404.1567(b), 416.967(b), "in relative isolation with limited contact with peers and supervisors" (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, remnant sorter, laundry worker, and hand packager (Tr. 21).

**Review**

The claimant contends that the ALJ erred in evaluating his mental impairments: (i) by failing to fully develop the record by ignoring notations from physicians that the claimant needed further testing; (ii) by failing to re-contact the source from Mercy Health of Love County to determine if that source qualified as a treating physician; and, (iii) by failing to explain discrepancies between state examining physicians. The Court finds merit in the claimant's second contention.

Besides his wife's testimony that the claimant was taking Lithium and attending mental health counseling once a month in Ardmore, there was relatively no testimony at the administrative hearing concerning claimant's mental health impairments (Tr. 286). The medical evidence, however, reveals that claimant was hospitalized at Griffin Memorial Hospital in Norman, Oklahoma for five days due to suicidal threats in September 2005 (Tr. 123). At the time of admittance, the claimant was apparently planning to shoot himself in the head, tested positive for marijuana and benzodiazepines, and was assigned a Global Assessment of Functioning (GAF) score of 25 upon admission

(Tr. 118). At discharge, however, claimant's GAF score had increased to 60, and he was diagnosed with an unspecified mood disorder (Tr. 119).

Two separate Psychiatric Review Techniques (PRTs) were performed to help determine the severity of claimant's mental health limitations (Tr. 173-85, 190-202). The first PRT was conducted by non-examining source Dr. Robert White, Ph.D., and from a review of the claimant's medical records, he determined that claimant suffered from affective disorder, personality disorder, and substance addiction disorders, but that none of these disorders rose to the level of being severe (Tr. 173). Dr. White ultimately concluded that claimant had only mild limitations in activities of daily living, social functioning, and concentration, persistence or pace (Tr. 183). The second PRT, performed by another non-examining source Dr. Carolyn Goodrich, Ph.D., found that claimant suffered from the same disorders as found by Dr. White, but that claimant had mild limitations in activities of daily living and moderate difficulties in maintaining both social functioning and concentration, persistence, and pace (Tr. 200).

The claimant presented on February 22, 2007 for a Mental Status Examination before Dr. Theresa Horton, Ph.D. (Tr. 167-70). During the course of this examination, Dr. Horton found claimant's thought processes to be logical, organized, and goal-directed, and opined that claimant had a tendency to exaggerate his symptoms (Tr. 169). Dr. Horton also found that claimant's effort was poor, as he purported to be unable to perform tasks that even severely mentally ill people were capable of performing (Tr. 170). However, despite these findings, Dr. Horton found that claimant does have a

"problem with aggression and likely depression" and concluded her examination by recommending that claimant undergo "additional assessment . . . including more thorough intellectual testing and personality profile" (Tr. 170).

The claimant also had a medical source complete a Mental Status Form on August 2, 2007 (Tr. 224). The ALJ rejected this statement because it came from an "unknown source" and was "inconsistent" (Tr. 19). The Commissioner argues that the latter finding is sufficient support for the ALJ's rejection of the statement, but the ALJ did not explain how the statement was inconsistent with the other medical evidence in the record. Nor did the ALJ make any attempt to determine the authorship of the statement, which seems to have come from the claimant's treating physician Dr. Larry Powell (Tr. 217). This was important to do because if the statement did come from Dr. Powell, the ALJ was required to give the medical opinions expressed in the statement much closer analysis before rejecting them out of hand as he appears to have done here.

Medical opinions from a claimant's treating physician are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even when a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to which they are entitled by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating

source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527]."), *quoting Watkins,* 350 F.3d at 1300. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) any other factors that tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300.

Thus, the ALJ should have re-contacted Dr. Powell to determine if he prepared the August 2, 2007 Mental Status Form. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912 (e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). If Dr. Powell did prepare the statement, the ALJ should have analyzed the medical opinions expressed therein for controlling weight as discussed above, beginning with a discussion of how

they were inconsistent with other medical evidence of record. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.").

The ALJ suggested that the Mental Status Form infringed on an issue reserved to the Commissioner by indicating that the claimant was unable to comprehend and carry out instructions on an independent basis and that he was also unable to respond to work pressure, supervision, and coworkers (Tr. 224). Assuming *arguendo* that this amounted to a conclusion that the claimant was disabled, *see, e. g.,* 20 C.F.R. § 404.1527(e)(1)-(3) (identifying opinions that the claimant is disabled, unable to work, or whether the impairment meets a Listing as reserved to the Commission and not entitled to any special significance), the ALJ was nevertheless required to determine the proper weight to give the opinion by applying *all of the factors* in 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th

Cir. 2002) ("An ALJ is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."). Indeed, the ALJ was required to do this with respect to any medical opinions expressed in the Mental Status Form even if it was prepared by someone other than Dr. Powell, *e. g.*, a non-treating physician. *See Hamlin,* 365 F.3d at 1215 ("An ALJ must evaluate *every medical opinion in the record*, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."), *citing Goatcher v. Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995) [emphasis added].

Because the ALJ failed to properly analyze the medical evidence of the claimant's mental impairment, the decision of the Commissioner must be reversed and the case remanded for further analysis by the ALJ. On remand, the ALJ should determine the source of the Mental Status Form and analyze it according to the process outlined above. If such analysis results in any modifications to the claimant's RFC, the ALJ should re-determine what work he can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2010.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**